```
                  IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| KEVIN BOZARTH, | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 08-5798 (JBS/KMW) |
| v. | |
| TOWNSHIP OF DEPTFORD, et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Randy P. Catalano, Esq.
216 Haddon Avenue
Suite 100
Westmont, NJ 08108
     -and-
Cheryl L. Cooper, Esq.
OANDASAN & COOPER P.C.
28 East Avenue
PO Box 326
Woodstown, NJ 08098
     Counsel for Plaintiff

Allan E. Richardson, Esq.
RICHARDSON & GALELLA
142 Emerson Street
Suite B
Woodbury, NJ 08096
     Counsel for Defendants Township of Deptford and Chief of
     Police John Marolt

A. Michael Barker, Esq.
Todd J. Gelfand, Esq.
BARKER, SCOTT & GELFAND
Linwood Greene
210 New Road
Suite 12
Linwood, NJ 08221
     Counsel for Defendants Patrolman James R. Magee, Patrolman
     Donald Kiermeier, Patrolman Eric Kerby, and Sergeant William
     J. Bittner

**SIMANDLE,** District Judge:

## I.  INTRODUCTION

This civil rights case involves the arrest and post-arrest treatment of Plaintiff Kevin Bozarth on November 28, 2006. Bozarth claims that Deptford Township police officers used excessive force against him while arresting him and when he was brought to the police station.  The matter is before the Court on the motion for summary judgment by Officers Kiermeier, Kerby, and Bittner.  [Docket Item 37.][1]  The principal issue is whether a reasonable jury could find from the evidence adduced in this case that Kerby and Bittner were among the officers who stomped on Plaintiff shortly after his initial capture, or could reasonably have intervened in that excessive use of force.

## II.  BACKGROUND

On November 28, 2006, Plaintiff Kevin Bozarth was residing in Deptford Township with his fiancee Nancy McCoy, Nancy's twin sons Brian and Tim, and Plaintiff's son Kevin Whitehouse. (Second Am. Compl. ¶ 14.)  Bozarth had consumed alcohol with his co-workers after work that day and prior to returning home.

---

[1]  Although Plaintiff has incorrectly spelled the officer's name in the pleadings and continues to misspell the name, Officer Kiermeier spells his name as spelled in this opinion.

(Bozarth Dep. 166:8-24.)[2]

When he arrived home, Nancy's twin sons Brian and Tim were fighting.  (Ex. G ¶ 2.)  Bozarth became involved in the scuffle, and at some point during the fight, the police were called by Nancy McCoy.  Bozarth fled out the back door as the police arrived, fearing he would be arrested for his failure to pay child support.  (Bozarth Dep. 171:15-22.)  He ran through the woods, across a shallow creek, and up an embankment.  (Bozarth Dep. 175:15-176:2.)

Bozarth claims that as he came walking up the embankment, police officers blinded him with flashlights, causing him to put his hands up and surrender.  (Bozarth Dep. 176:10-177:5.)  He says one of the male officers, whom he cannot identify, clothes-lined him, knocking him onto his back on the ground.  (Bozarth Dep. 178:6-16.)  Bozarth testified that three or four officers then began stomping him on his ribs.  (Bozarth Dep. 180:8-183:16.)  Bozarth was then stood up, handcuffed, placed in a police car, and transported to the police station.

Bozarth has maintained that he is not certain who was

---

[2] Defendants expend many pages detailing the events prior to Plaintiff's arrest, perhaps trying to cast doubt on Bozarth's credibility regarding the subsequent events and to call into question the source of his injuries.  But credibility judgments are not for this Court to make on this motion.  The Court therefore does not address many of the disputed facts regarding the lead-up to the alleged uses of excessive force to the extent they are not relevant to this motion.

3

present at this initial encounter.  He admitted in interrogatories that if the officers' own reports were accurate — which he does not concede — that this would mean that only Officer Magee was present for the initial alleged beating.  Officer Magee died shortly after this complaint was brought, and he was never deposed.[3]

Bozarth claims that when he arrived at the station, he was also subjected to multiple uses of excessive force, but as explained below, the facts regarding those alleged incidents are not at issue in this motion.

The Second Amended Complaint contains seven counts.  Count I brings an excessive force claim, presumably pursuant to 42 U.S.C. § 1983, though it does not specify as much.  Count II pleads a violation of the New Jersey Constitution, without specifying any particular part of that document.  Based on the parties' briefing, it appears that the count is meant to mirror the excessive force claim.  Counts III and IV seek to establish

---

[3] The docket does not reflect that notice of the death of Defendant Magee was served or filed.  However, it appears that Defendant Magee passed away some time between the filing of the Amended Complaint on January 7, 2010 and the Second Amended Complaint on March 30, 2010 since the Second Amended Complaint names "Patrolman James R. Magee (deceased, by and through the Administratrix of his Estate, Michele Magee)."  The amendment to the pleading was evidently made with the consent of Defendants since there was no Court order pursuant to Rule 15 and Defendants answered without objecting.  Because the issue has not been raised, the Court does not address the extent to which Plaintiff's seven claims survive the death of Patrolman Magee.

municipal and supervisory liability (imputed to unnamed supervisors) for the use of excessive force.  Count V pleads a claim for negligence based on the allegations of excessive force.  Count VI pleads "state law torts" without identifying them, but vaguely referring to assault and battery.  And Count VII is labeled "conspiracy," and alleges that "Some or all of the aforesaid acts of the defendants were conducted recklessly or with the intent of causing the plaintiff severe emotional distress," and that "The conduct of the defendants was extreme and outrageous, which caused the Plaintiff to suffer severe emotional distress as a result of the previously mentioned conduct."  This Court has federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction of related state-law claims under 28 U.S.C. § 1367.

 Defendants Kiermeier and Kerby seek summary judgment as to all of Plaintiff's claims, arguing that there is no evidence that either officer was present during any of the alleged instances of excessive force.  Defendant Bittner seeks partial summary judgment as to the claims against him arising out of the initial arrest of Plaintiff, contending that there is no evidence that he was at the scene at that time.

## III. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the suit under the applicable rule of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

A fact is only in dispute if there is some evidence produced for it; allegations or denials in the pleadings are insufficient to create a genuine dispute. Fed. R. Civ. P. 56(c)(1)(A); United States v. Premises Known as 717 S. Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993). However, any evidence that is produced will be viewed in favor of the nonmoving party and the Court will extend any reasonable favorable inferences to be drawn from that evidence to that party. Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

When the nonmoving party bears the burden of persuasion at trial, the moving party may be entitled to summary judgment merely by showing that there is an absence of evidence to support an essential element of the nonmoving party's case. Fed. R. Civ. P. 56(c)(1)(B); Celotex Corp. v. Catrett, 477 U.S. 317, 325

(1986).[4]

## B. Excessive Force Standard

The Fourth Amendment prohibits the use of excessive force by a law enforcement officer. Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004). Whether a given instance of force is excessive depends on the objective reasonableness of the force used under the circumstances. Couden v. Duffy, 446 F.3d 483, 496 (3d Cir. 2006). Assessing reasonableness requires an evaluation of the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, whether he is actively resisting arrest or attempting to evade arrest by flight, and any other relevant factors such as the duration of the officer's action or the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time. Id. In evaluating

---

[4] Unfortunately, both parties did not correctly follow the local rules governing summary judgment. In the District of New Jersey, Local Civil Rule 56.1(a) requires the movant to provide a Statement of Material Facts not in Dispute, and the non-movant to respond to the movant's statement paragraph-by-paragraph, with any denials keyed to facts in the record. Similarly, the non-movant may submit a supplemental statement of disputed material facts, to which the movant must respond. Although each party offered a statement of material facts, neither side responded to the other's statement. The consequence of this form of half-compliance with the rule is generally that facts not responded to are admitted. In this case, the only relevant facts adduced by the moving party are those contained in Plaintiff's own testimony and admissions, which Plaintiff does not dispute.

7

reasonableness, the court must consider the perspective of the officer on the scene, taking into consideration the fact that "police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." Graham v. Connor, 490 U.S. 386, 396-97 (1989).

Under some circumstances, a police officer has a duty to prevent another officer from using excessive force. Smith v. Mensinger, 293 F.3d 641, 650-51 (3d Cir. 2002). Generally, "a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior." Id. But there must be a "realistic and reasonable opportunity to intervene." Id.

### C. Excessive force claims

Plaintiff agrees that Officer Kiermier was not involved in any of the alleged incidents, and does not object to dismissal of the case as a whole against Kiermier. Pl.'s Br. 4 n.1. Officer Kiermier will therefore be granted summary judgment as to all of Plaintiff's claims.

Officer Bittner does not seek summary judgment as to any incident other than the initial arrest, and Plaintiff does not contend that Kerby's later involvement at the police station

8

constituted excessive force or placed Kerby in a position to prevent excessive force, so Kerby is entitled to partial summary judgment as to those parts of Counts I-VI asserting that excessive force was used at the police station.[5] Finally, there is no evidence from which it could be determined which officer clothes-lined Plaintiff, or whether the other officers could have prevented this sudden move.

Consequently, the only remaining issue for this motion is whether Plaintiff has adduced evidence of Kerby and Bittner's involvement in the alleged stomping and kicking of Plaintiff at the time of his arrest. Defendants do not assert for the purposes of this motion that the stomping would not constitute excessive force, or that they reasonably could have believed such force was called for, and so the only issue for the Court is whether there is evidence of Defendants' involvement.

Plaintiff cites the deposition testimony of each officer, both of whom concede that they eventually arrived on the scene but maintain that they arrived only after any violence occurred. Kerby testified that he eventually arrived at the location of

---

[5] Officers Bittner and Kerby mistakenly argue that there is no claim for which they can be liable that does not require their presence during the instances of alleged excessive force, but Plaintiff does bring a claim of conspiracy, which would not require their personal presence at the scenes of the use of excessive force. It is not clear that Plaintiff has properly pleaded this claim, has evidence to support it, or that Plaintiff even intends to pursue it, but the Court cannot simply dismiss the claim <u>sua sponte</u> in the absence of argument from the parties.

Plaintiff's arrest "[j]ust as Officer Magee was handcuffing him and putting him in his patrol vehicle," but was not present for the initial apprehension and subduing of Plaintiff. Kerby Dep. 14:1-17. Similarly, Bittner testified that he arrived "as Officer Magee was either handcuffing or searching Mr. Bozarth and putting him in the back of his patrol vehicle."[6] Bittner Dep. 12:12-15:17. Since this testimony is the only evidence of these officers' presence, the question is whether the Court can and must credit the part of the testimony favorable to Plaintiff (that the officers were present at the scene of Plaintiff's capture) but not the testimony harmful to Plaintiff's case (that the officers arrived after the alleged use of force).

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." Anderson, 477 U.S. at 255. Therefore, the question on summary judgment is whether a reasonable jury could find the necessary facts for liability from the evidence presented, based on any reasonable credibility determinations and weighing of the evidence.

In this case, the jury would be presented with Plaintiff's testimony that three or four officers stomped on him after he had

---

[6] Sergeant Bittner was uncertain about who the third officer at the scene was, guessing it was an officer named Eavis.

been subdued.  The jury would also be presented with the testimony of Bittner and Kerby that they eventually arrived on the scene of the arrest and that there were no other officers on the scene, but that Plaintiff was already being handcuffed at that point.  A reasonable jury could weigh the evidence and find that Plaintiff is telling the truth, and that Defendants are telling only part of the truth.  See Sharp v. Penske Buick GMC, Inc., 686 F. Supp. 2d 530, 540 (E.D. Pa. 2010) (noting that court must consider the possibility that a factfinder credits only part of a deponent's testimony); Dorsett v. American Isuzu Motors, Inc., 805 F. Supp. 1212, 1230 (E.D. Pa. 1992) (same).

When one takes Plaintiff's testimony as true, then Bittner and Kerby's testimony is consistent with only three possible scenarios: two officers who have not been identified anywhere in the police reports, deposition testimony, or anywhere else in discovery came to the scene with Magee and were involved with the clothes-lining and stomping and then left before Bittner and Kerby arrived; two as-yet unidentified officers were present and Bittner and Kerby lied about no other officers being present; or Bittner and Kerby were themselves the other two officers and they did not testify truthfully about the precise time of their arrival and their conduct at the scene.  On the evidence now in the record, a reasonable jury could find the last possibility to be the truth.

11

If the jury were to credit Plaintiff's testimony in full, and that part of Bittner and Kerby's testimony suggesting that they were at the arrest scene, then a reasonable jury could find that Bittner and Kerby were involved in the alleged use of excessive force. Since these material facts are in dispute, the summary judgment motion of Bittner and Kerby will be denied as to the events surrounding the initial arrest.

## IV. CONCLUSION

Plaintiff concedes that Officer Kiermier was not involved in any of the alleged incidents. And Plaintiff does not contend, much less explain how Officer Kerby could be held liable for the events after Plaintiff's arrival at the police station. Therefore, summary judgment will be granted to Officer Kiermier as to all claims, and partial summary judgment will be granted to Officer Kerby as to those parts of Counts I-VI relying on the excessive force after the initial arrest. However, because a reasonable jury could credit Plaintiff's account and only part of Defendants' account of the initial arrest, summary judgment will be denied as to the claims against Kerby and Bittner arising out of the initial arrest. The accompanying Order will be entered.

**August 4, 2011**         **s/ Jerome B. Simandle**
Date        JEROME B. SIMANDLE
       United States District Judge